UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

-----------------------------------------------------------------X
MOONDANCE MARITIME ENTERPRISES S.A.,

         Plaintiff,

  -against-

CARBOFER MARITIME TRADING APS and
CARBOFER GROUP SA,

         Defendants.
-----------------------------------------------------------------X

Case No. 12-sc-818 DSD/JJG

ADMIRALTY

## ORIGINAL VERIFIED COMPLAINT

Plaintiff, MOONDANCE MARITIME ENTERPRISES S.A. (hereinafter "MOONDANCE"), by its undersigned attorney, as and for its Verified Complaint against Defendants, CARBOFER MARITIME TRADING APS (hereinafter "CARBOFER MARITIME") and CARBOFER GROUP SA (hereinafter "CARBOFER GROUP") (collectively "Defendants"), upon information and belief alleges as follows:

### JURISDICTION

1. The Court has subject matter jurisdiction by virtue that the underlying claim herein is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the admiralty and maritime jurisdiction of this Court under 28 U.S.C. § 1333.

2. Jurisdiction and venue is founded on the presence within the District of Minnesota of property belonging to Defendants, which may be attached in accordance with the provisions of Supplemental Rule B, as pled below.

Chalos & Co. Ref: 2263.001



SCANNED
APR 19 2012
U.S. DISTRICT COURT MPLS

4/2/12

## THE PARTIES

3. At all times material here, Plaintiff, MOONDANCE, was and still is a foreign company organized under the laws of the Marshall Islands.

4. At all material times, Defendant CARBOFER MARITIME was and still is a foreign company organized under the laws of Denmark, and with a registered address at: Langelinie Alle 25A, DK-2100 Copenhagen, Denmark.

5. At all material times, Defendant CARBOFER GROUP was and still is a foreign company organized under the laws of Luxemburg.

## FACTS AND CLAIM

6. On or about August 17, 2009, MOONDANCE as Owners of the M/V MOONDANCE II ("the Vessel"), entered into a time charter party with CARBOFER MARITIME, as Charterers, whereby MOONDANCE was to supply the Vessel to CARBOFER MARITIME for a minimum of thirty two (32) months to maximum thirty eight (38) months, with duration at Charterers' option. *A copy of the Time Charter Party is attached hereto as Exhibit 1.*

7. On the same day, Plaintiff entered into a guarantee agreement with Defendant CARBOFER GROUP in connection with the August 17, 2009 charter party, in which CARBOFER GROUP agreed as follows:

> *...In consideration of your agreement to enter into the Charter, we hereby irrevocably and unconditionally guarantee to you, as primary obligor and not merely as surety, that the Charterer will pay to you in full when due each sum payable from time to time under and in connection with the Charter and perform fully and in a timely manner all of its other obligations under the Charter. If for any reason the Charterer should fail to pay to you when due any amount for which it is liable under or in*

*connection with the Charter or should fail to perform any of its obligations under the Charter in a timely manner and such failure continues for a period of 10 days from the date on which the relevant payment or the performance of any other obligation is due, we undertake to: pay any amount owing under or in connection with the Charter directly to you, immediately upon your first demand; and perform any obligation under or in connection with the Charter, immediately upon your first demand.*

*A copy of the guarantee agreement is attached hereto as Exhibit 2.*

8.  Pursuant to the terms and conditions of the charter party agreement, CARBOFER MARITIME was under an obligation to pay for the use and hire of the vessel at a rate of USD 13,775[1] from the time and date of her delivery until the time and date of her redelivery. *See Exhibit 1 at clause 4.*

9.  Plaintiff delivered the M/V MOONDANCE II to CARBOFER MARITIME on or about July 10, 2010. Based on the terms of the charter party, the earliest date of redelivery for the Vessel was March 10, 2013 (*i.e.* – 32 months).

10. On March 14, 2012, CARBOFER MARITIME advised Plaintiff that it was unable to continue to perform under the charter party (*i.e.* – approximately three hundred and sixty one (361) days ahead of the earliest scheduled redelivery date).

11. In response, Plaintiff advised CARBOFER MARITIME that its conduct was a repudiation of the charter party, and accordingly, the charter party was terminated.

12. As of March 15, 2012, the outstanding balance of hire due and owing to Plaintiff is **USD 200,728.63**.

---

[1] This amount is calculated based on the hire Plaintiff was to earn under the charter party agreement (*i.e.* – USD 14,500 per day) less the applicable 5% commission.

13. Pursuant to applicable English law, CARBOFER MARITIME's early redelivery is a repudiation of the charter party by CARBOFER MARITIME and entitles Plaintiff to accept the repudiation and seek damages for the loss of revenue. Plaintiff has mitigated damages by chartering the vessel for a substitute fixture.

14. On March 15, 2012, Plaintiff secured a substitute fixture for the Vessel, for a minimum of ten (10) months to twelve (12) months, at substitute charterers' option, at a rate of USD 10,545.[2] The Vessel was delivered to the substitute charterer on March 18, 2012.

15. Accordingly, Plaintiff is entitled to the daily hire rate under its charter party with CARBOFER MARITIME for the period between the termination of the charter party and its delivery to the substitute charterer. Plaintiff's damages in this regard total **USD 35,539.50** (USD 13,775 x 2.58 days).

16. Plaintiff is also entitled to the daily hire rate for the balance of the period fixture of three hundred and fifty eight (358) days, less hire earned under the substitute fixture. Plaintiff's damages and loss of revenue are in an amount of not less than **USD 1,156,340**[3] for the remainder of the charter period.

---

[2] This amount is calculated based on the hire Plaintiff was to earn under the substitute fixture (*i.e.* – USD 11,100 per day) less the applicable 5% commission.

[3] Plaintiff's estimated loss of revenue damages are based upon the difference between the hire which Plaintiff would have earned under the charter party agreement, i.e. USD 13,775 per day (contractual rate of USD 14,500, less applicable commission) and the hire which Plaintiff will earn under the substitute fixture of USD 10,545 per day (contractual

17.  Despite repeated demands by MOONDANCE, and CARBOFER MARITIME's acknowledgement that outstanding hire (USD 200,728.63) and the loss of future earnings are due to Plaintiff, Defendants, in breach of the parties' contracts, have failed, neglected and/or otherwise refused to pay Plaintiff the outstanding amounts undisputedly due and owing to Plaintiff, and interest continues to accrue on the unpaid amounts.

18.  In breach of the terms of the charter party and guarantee agreement, Defendants have refused, neglected, and/or otherwise failed to pay the outstanding principal balance of **USD 1,392,608.13** which is due and owing to the Plaintiff.

19.  Plaintiff has duly demanded payment from the Defendants and, in the alternative has sought security from them, both of which Defendants have refused and resisted.

### III. UNDERLYING PROCEEDINGS ON THE MERITS

20.  Pursuant to the terms of the time charter party between Plaintiff and CARBOFER MARITIME, all disputes arising thereunder are to be submitted to London arbitration with English law to apply.  Plaintiff has or soon will commence arbitration in London if it does not timely receive the amount due and owing to it from CARBOFER MARITIME.

---

rate of USD 11,100 less applicable commission).  Accordingly, [USD 13,775/day – USD 10,545/day] x 358 days = USD 1,156,340.

21. Pursuant to the terms of the guarantee agreement between Plaintiff and CARBOFER GROUP, all disputes arising thereunder are to be submitted to English courts with English law to apply. Plaintiff has or soon will commence an action in the English High Court if it does not timely receive the amount due and owing to it from CARBOFER GROUP.

22. This action is an ancillary proceeding, brought in order to obtain jurisdiction over the Defendants and to obtain security for Plaintiff's claims in aid of the London arbitration and English High Court proceeding.

23. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.

24. As best as can now be estimated, Plaintiff expects to recover the following amounts from Defendants under London arbitration and the English High Court proceeding:

    a. Principal Claim: USD 1,392,608.13

    b. Estimated interest[4] on Principal Claim: USD 60,135.81

    c. Estimated attorneys' fees: USD 60,000.00

    d. Estimated arbitration costs/expenses: USD 60,000.00

    **Total Claim:** **USD: 1,572,743.94**

---

[4] Interest based upon arbitration estimate of one (1) year (quarterly compounded at 4.25%).

25. Therefore, MOONDANCE's total claim for breach of the maritime contract against Defendants is in the aggregate USD 1,572,743.94.

## BASIS FOR ATTACHMENT

26. None of the Defendants are present or can be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *See Attorney Affidavit of Daniel J. Cragg attached hereto as Exhibit 3.* Notwithstanding, the Defendants have within the District tangible or intangible personal property in the hands of parties who may be named garnishees in the process of maritime attachment and garnishment consisting of debts, credits, or effects including but not limited to accounts, checks, payments held or which may be receivable by the said garnishees on behalf of the said Defendants.

27. More particularly, Carbofer General Trading USA Corp., a business corporation with an office within the district, is a direct subsidiary of Defendant CARBOFER GROUP. Accordingly, it is reasonably probable that the parent company owns the controlling shares of its subsidiary, Carbofer General Trading USA Corp. *A copy of a print out from CARBOFER's website showing the company structure is attached as Exhibit 4, pg. 5.*

28. Further, as Carbofer General Trading USA Corp. is part of the CARBOFER GROUP's distribution network, which provides shipping services to the CARBOFER GROUP, it is likely that Carbofer General Trading USA Corp. has in its possession and/or control tangible or intangible property of Defendants including but not limited to funds advanced by Defendants in respect of disbursements, pilots, tugs,

stevedoring services, port costs, and expenses relating to the hire and calls of vessels operated by the said Defendants. *See Exhibit 4, pg 4.*

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

A.  That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Complaint;

B.  That if Defendants cannot be found within this district, then all of their respective property within this district, including debts, credits, or effects including but not limited to accounts, checks, disbursement advances, payments, and empty shipping containers owned by the said Defendants located ashore or in the hands of persons named as garnishees in the Process of Maritime Attachment and Garnishment be attached and seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

C.  That a judgment be entered against the Defendants in the sum of USD 1,572,743.94 and the proceeds of the assets attached be applied in satisfaction thereof;

D.  That the Court grant such other and further relief as it deems, just, equitable and proper.

|  |  |
|---|---|
| Dated: March 30, 2012 | ECKLAND & BLANDO LLP<br><br>/s/ Daniel J. Cragg<br>Daniel J. Cragg, Esq. (#389888)<br>10 South Fifth Street, Suite 1020<br>Minneapolis, MN 55402<br>(612) 236-0160<br>F: (612) 236-0179<br>dcragg@ecklandblando.com<br>*Attorney for Plaintiff Moondance Maritime Enterprises S.A.* |

*Of counsel*:

CHALOS & CO, P.C.
George M. Chalos
55 Hamilton Avenue
Oyster Bay, New York 11771
Telephone: 516-714-4300
Fax: 1-516-750-9051